UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TEXTIO, INC.,

    Plaintiff,

v.

ONGIG, INC.,

    Defendant.

Case No.: 2:18-cv-958

**COMPLAINT FOR (1) VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, (2) BREACH OF CONTRACT, (3) STATUTORY UNFAIR BUSINESS PRACTICES, (4) COMMON LAW UNFAIR COMPETITION**

**JURY TRIAL DEMANDED**

Plaintiff Textio, Inc. brings this action against Defendant Ongig, Inc. to enjoin and seek relief for Ongig's practice of accessing Textio's online platform using false pretenses, in violation of Textio's terms of service and multiple state and federal laws. Ongig was once a paying Textio customer. But beginning in 2016, Ongig decided it wanted to use the Textio product for free. It terminated the relationship and then repeatedly registered for trial accounts using both Ongig and fictitious email addresses. Through this pattern of pretexting, Ongig gained ongoing access to Textio's platform without paying license fees. Worse, rather than use the platform for internal purposes as Textio's trial license agreement requires, Ongig ran job descriptions through the Textio platform that it repurposed and sold to its own customers. This practice has directly harmed Textio and interfered with its customer relationships. Textio has attempted to resolve this dispute informally, but Ongig has refused to comply with its legal obligations. Textio therefore seeks an injunction prohibiting Ongig from further accessing Textio's platform, as well as damages and attorneys' fees.

## THE PARTIES

1. Plaintiff Textio provides technologies that help businesses create more effective business writing. It operates a predictive engine to analyze hiring data and find meaningful language patterns to help assess and improve job placement. Textio is a corporation organized and existing under the laws of Delaware. Textio's principal place of business is 920 5th Ave, Suite 2300, Seattle WA 98104.

2. Defendant Ongig offers a job description writing service through the use of employees it holds out as professional copyrighters. On information and belief, Ongig is a corporation organized and existing under the laws of Delaware, and its principal place of business is either 6114 La Salle Avenue or 1912 Tiffin Road, Oakland, California.

## JURISDICTION AND VENUE

3. In this action, Textio alleges that Ongig has engaged in (i) violations of the Computer Fraud and Abuse Act under 18 U.S.C. § 1030; (ii) Breach of Written Contract; (iii) Unfair Business Practices under RCW 19.86 *et seq.*; and (iv) Unfair Competition under Washington common law.

4. This Court has original subject matter jurisdiction over Textio's federal claim under 28 U.S.C. §§ 1331 and 1338. Textio also asserts closely related claims under Washington law, which fall within this Court's supplemental jurisdiction under 28 U.S.C. §1367(a).

5. The Court has personal jurisdiction over Ongig because, in accessing and using Textio's platform, including agreeing to Textio's terms of service each time its employees signed up for a Textio trial account, Ongig purposefully directed its activities and consummated transactions within Washington and purposefully availed itself of the privilege of conducting activities in Washington, thereby invoking the benefits and protections of Washington law. The Court has personal jurisdiction for the additional reason that, in registering for Textio's product and thereby agreeing to Textio's terms of service, Ongig irrevocably consented to the jurisdiction of the state or federal courts located in this judicial district.

6. Venue in this judicial district is proper under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this judicial district. Venue

is proper for the additional reason that, in registering for Textio's product and thereby agreeing to Textio's terms of service, Ongig irrevocably consented to venue in the state or federal courts located in this judicial district.

## TEXTIO'S BUSINESS

7. Textio offers communications software, including text recognition and analysis software, data visualization software, and data analytics software for use in job placement, recruiting and consulting, among other fields.

8. Textio helps employers create effective job listings by analyzing job postings and hiring outcome data. Textio's predictive engine uncovers meaningful patterns in language, which are then used to generate a "Textio Score" to predict how effective a communication will be at recruiting qualified applicants quickly. Below is a screenshot of the Textio platform ingesting a job description, providing a Textio score, and identifying language patterns for consideration:



9. Textio has quickly grown and garnered recognition in the job placement industry for its innovative approach to helping companies recruit better and more diverse talent. These companies include Cisco, Johnson & Johnson, Twitter, CVS, Thomson Reuters, Bloomberg, Box, Dropbox, Intel, Spotify, Allstate, Slack, VMware, Expedia, and eBay, as well as entities like Northwestern University and the NBA.

10.     Textio sells licenses for use of its product. In 2015, Textio's pricing model allowed customers to pay a "per seat" license fee, *i.e.* customers could purchase a separate license for each individual user.

11.     In spring of 2016, Textio changed its pricing model and began selling licenses on a per-job description basis. Customers pay an allocated amount per payment period based on the number of job descriptions they input into Textio's platform for analysis during the period.

## DEFENDANT WAS AN EARLY CUSTOMER OF TEXTIO

12.     Ongig offers various services relating to job description writing, including job description writing by employees it holds out as professional copyrighters. Ongig describes this offering as "dynamic" job descriptions that include an enhanced emphasis on the customer's company branding through use of videos, pictures, as well as consistent formatting, fonts, and color scheme "consistent with your brand!"

13.     Ongig also claims to offer rewritten job descriptions, a "recruiting media library" through which its customers can upload recruiting materials for placement on relevant job pages, placement of recruiting widgets like Chat, Glassdoor, and LinkedIn on a customer's relevant webpages, and an artificial intelligence-based job search and browse function.

14.     In 2015, Ongig purchased a license from Textio for a single "seat," meaning that a single individual at Ongig would use the license to access Textio.

15.     Textio believes and therefore alleges that Ongig shared the login credentials for its single-seat license with multiple individual employees or agents of Ongig, inputting hundreds of job descriptions into the Textio platform through that single seat license. Although that license permitted only internal use, on information and belief, Ongig used Textio's software platform for external business purposes.

16.     Textio believes and therefore alleges that Ongig used the product to run job descriptions it wrote for other businesses through the Textio platform. Because Textio has garnered wide use and recognition among several prominent companies for its platform and scoring system, Ongig benefitted from being able to create job descriptions for its clients that it could promote has having achieved a high score on the Textio platform.

17.     Textio believes and therefore alleges that Ongig was satisfied with Textio's product. During the time it was a paying customer, Rob Kelly, Ongig's CEO and Co-Founder, contacted Textio and said, "We remain bullish on textio. Longer term, we'd love to do an annual subscription on behalf of our clients and we can bill back to our clients."

**ONGIG'S CANCELLATION OF ITS SINGLE-SEAT LICENSE AND SUBSEQUENT UNLAWFUL ACCESS OF THE TEXTIO PLATFORM**

18.     In 2016, when Textio moved to a per-job-description pricing model, Ongig terminated its single-seat license. At that time, Ongig conveyed to Textio that Ongig loved the Textio product but was disappointed about the change in pricing.

19.     Textio believes and therefore alleges that Ongig did not, however, cease using Textio's product when it terminated its single-seat license.

20.     Textio believes and therefore alleges that instead, beginning at least as early as August 2016 and continuing through at least March 2018, Ongig accessed the Textio product by repeatedly registering for trial accounts using inaccurate or false login information, without ever purchasing a license once the trials concluded. Textio believes and therefore alleges that, in addition to use of Ongig email addresses to create Textio user accounts, several Ongig employees accessed the Textio website from the same IP addresses as those corresponding to the Ongig email address accounts, but using fictitious email addresses or alternative domain email addresses (e.g. Gmail and Hotmail). Many of these email addresses suggest a pattern where the same user repeatedly generates new trial accounts by adding a number or month to his or her user name after the trial period has expired (e.g. name@gmail.com, name+1@gmail.com, name+july@gmail.com).

21.     For example, on information and belief:

    a. On August 8, 2016 a person acting on Ongig's behalf registered for a trial of Textio using an Ongig email address. The account was active from August 8 through August 22, 2016 and used to submit and edit a document.

    b. On December 14, 2016, a person acting on Ongig's behalf registered for a trial of Textio using an Ongig email address. The account was active from

December 14 through December 28, 2016 and, this time, escalated use of the Textio platform, uploading ten documents and making forty-seven document edits.

c. Textio believes and therefore alleges that, the very next day, on December 29, 2016, a person acting on Ongig's behalf registered for a trial of Textio, this time using a Gmail address. The account was used to upload and edit a document.

d. Beginning on July 7, 2017 through February 14, 2018, Ongig never went more than three weeks—usually far less than that— without having a trial Textio account active. On July 7, 2017, a person acting on Ongig's behalf registered for a trial of Textio using an Ongig email address. The account was active from July 7 through July 21, 2017.

e. On July 31, 2017, a person acting on Ongig's behalf registered for a trial of Textio using an Ongig email address. The account was active from July 31 through August 14, 2017 and, during that time, submitted and edited multiple documents.

f. On August 1, 2017, a person acting on Ongig's behalf registered for a trial of Textio using an Ongig email address. The account was active from August 1 through August 15, 2017, running 11 documents through Textio and making dozens of edits.

g. After August 15, 2017, Ongig stopped using Ongig email accounts to create trial accounts and started generating accounts using other domain accounts. From this point forward, the usage of Textio as measured by the number of documents run through the platform per account trended significantly higher.

h. Textio believes and therefore alleges that, on August 23, 2017, a person acting on Ongig's behalf registered for a trial of Textio using a Gmail address. The account was active from August 23 through September 6,

2017, running 41 documents through Textio and making over 80 document edits.

    i. Textio believes and therefore alleges that, on September 21, 2017, a person acting on Ongig's behalf registered for a trial of Textio, again using a Gmail address. The account was active from September 21 through October 5, 2017, running 13 documents through the Textio platform and making *nearly 1,000* document edits.

    j. Textio believes and therefore alleges that, on September 25, 2017, a person acting on Ongig's behalf registered for a trial of Textio using a Gmail address. The account was active from September 25 through October 9, 2017, running 7 documents through Textio platform and making 15 document edits.

    k. Textio believes and therefore alleges that, on October 12, 2017, a person acting on Ongig's behalf registered for a trial of Textio using a Hotmail address. The account was active from October 12 through October 26, 2017 running 5 documents through Textio and making 24 document edits.

    l. Textio believes and therefore alleges that, on November 7, 2017, a person acting on Ongig's behalf registered for a trial of Textio using a Hotmail address. The account was active from November 7 through November 21, 2017, running 2 documents through Textio and making 11 document edits.

    m. Textio believes and therefore alleges that, on November 28, 2017, a person acting on Ongig's behalf registered for a trial of Textio using a Gmail address. The account was active from November 28 through December 12, 2017, running 42 documents through Textio platform and making 62 document edits.

    n. Textio believes and therefore alleges that, on January 4, 2018 a person acting on Ongig's behalf registered for a trial of Textio using a Gmail

address.  The account was active from January 4 through January 18, 2018, running 13 documents through and making 26 document edits.

o. Textio believes and therefore alleges that, on January 18, 2018, a person acting on Ongig's behalf registered for a trial of Textio using a Hotmail address.  The account was active from January 18 through January 23, 2018, running 6 documents through Textio and making 19 document edits.

p. Textio believes and therefore alleges that, on January 31, 2018, a person acting on Ongig's behalf registered for a trial of Textio using a Gmail address.  The account was active from January 31 through February 14, 2018, running 17 documents through Textio and making nearly 40 document edits.

22. On February 28, 2018, Textio sent Ongig a letter demanding that it cease and desist its unlawful practice of creating serial trial accounts with Textio.  Ongig thereafter represented to Textio that it ceased this practice.

23. Ongig's representation that it ceased unlawfully accessing Textio's product was false. Textio believes and therefore alleges that, on or around March 29, 2018, an employee of Ongig used a Gmail address to sign up for a trial of Textio.  The employee, Ileana Terrazas, listed Ongig as her company in signing up for the trial.  Ms. Terrazas created this account after Textio expressly demanded that Ongig cease unlawfully accessing Textio's product in this manner.

24. Textio believes and therefore alleges that other employees or agents of Ongig have continued to unlawfully access Textio after Textio demanded Ongig stop this practice. Ongig has refused to provide a full list to Textio of the email addresses it has used to create trial accounts, so Textio is unable to confirm the extent to which Ongig's unlawful use of Textio's product has continued.

25. Textio believes and therefore alleges that Ongig's employees or agents who have frequently accessed the Textio product using Ongig or other email accounts in this manner include Ongig's Client Success representative, Christine Kriner, an Ongig content creator named

Ileana Terrazas, Kevin Lanik, Ongig's Lead Engineer and co-founder, and Jason Webster, Ongig's former director of sales and co-founder.

26. Textio believes and therefore alleges that trial user accounts affiliated or linked with Ongig have run over 170 job posts through the Textio platform without paying for a single one.

27. Textio believes and therefore alleges that persons acting on Ongig's behalf have registered for perhaps several additional trial accounts under fictitious email addresses that Textio has not been able to ascertain or identify as being affiliated with Ongig.

28. Textio believes and therefore alleges that Ongig's use of Ongig and other email addresses to repeatedly sign up for trial accounts of Textio demonstrates that Ongig knew this conduct was improper and unlawful, but pursued it anyway.

## ONGIG USED TEXTIO FOR EXTERNAL BUSINESS PURPOSES

29. Textio's license agreements, including the agreements that Ongig entered into, prohibit the use of the Textio platform for anything other than internal purposes.

30. Textio believes and therefore alleges that Ongig accessed Textio in the manner alleged above not for its internal business purposes, but to market and provide job description writing services to others.

31. Textio believes and therefore alleges that Ongig accessed the Textio platform to generate job descriptions that it then repurposed and resold to its customers.

32. As of February 28, 2018, Ongig's "What We Do" webpage boasted of a service through which Ongig's clients could receive rewritten job descriptions "guaranteed a score of 96+ out of 100 as measured by Textio." **Exhibit A** is a screenshot of Ongig's "What We Do" page taken on or around June 27, 2018.

33. Textio believes and therefore alleges that Ongig was able to boast that it could obtain a high Textio score because it was routinely using the Textio platform. Ongig has improperly and unjustly benefitted from attaching to its job descriptions a Textio score, which has grown to have meaning among prominent companies and in the job description and placement industry.

34. Textio believes and therefore alleges that Ongig's deliberate reference to, and use of, the Textio score feature has given prospective customers of Textio and/or Ongig the false impression that customers of Ongig can get Textio's product *through* Ongig. Textio is aware of potential customers who have not purchased Textio because, as they have explained, they are getting the benefit of Textio's technology through Ongig's service.

### ONGIG'S CONDUCT VIOLATES TEXTIO'S TERMS OF SERVICE

35. Users cannot access trials of Textio without first agreeing to Textio's Terms of Service.

36. Upon visiting Textio's website and clicking a button that says "Try Textio for free!", the visitor views this screen prompt:



37. After inputting a work email address and clicking "Get started," the visitor then views a second window requesting additional user information. This screen includes a box next to the hyperlinked text "I agree to the Textio Terms of Service." The hyperlinked text links to Textio's Terms of Service and Privacy Policy. A visitor signing up for Textio must click the box agreeing to the Terms of Service and Privacy Policy to proceed to the next window.

> **Welcome to Textio!**
> Hi name@business.com! Tell us a bit about you and we'll get started.
>
> Create password
>
> First name          Last name
>
> Company or organization
>
> Job title
>
> Phone number
>
> ☐ I agree to the Terms of Service and Privacy Policy
>
> Get started   No thanks

38. Textio believes and therefore alleges that, each time a person acting on behalf of Ongig registered for a trial of Textio as alleged above, that person agreed to Textio's terms of service. **Exhibit B** is a copy of Textio's terms of service that were in effect at all times relevant to the allegations of the Complaint.

39. Ongig also agreed to Textio's Terms of Service when it purchased a single-seat license for Textio in 2015.

40. Section 2.2 of the Terms of Service grants the user a non-transferrable right to access and use Textio's product "solely for [the registrant's] internal business use."

41. Section 2.3 of the terms of the Terms of Service provides that Textio users "will not . . . copy the Services in whole or in part" or "access the Services in order to build a competitive product or service."

42. Textio believes and therefore alleges that Ongig's use of its sharing of its single-seat license among multiple users within the company in 2015 violated Sections 2.2 and 2.3 of the Terms of service because Ongig transferred its rights in the license among multiple users in the company to use Textio to generate customer-facing job descriptions that it passed off as its own products. Ongig's use was not solely for its internal business use and was aimed at developing its own competitive product or service.

43. Textio believes and therefore alleges that Ongig's use of the Textio platform from 2016 to 2018 as alleged above violates Sections 2.2 and 2.3 of the Terms of service because Ongig repeatedly exploited the Textio trial account feature to generate hundreds of customer-facing job descriptions that it passed off as its own product. Ongig's use was not solely for its internal business use and was aimed at developing its own competitive product or service.

## TEXTIO'S EFFORTS TO RESOLVE ITS DISPUTE WITH ONGIG

44. In February 2018, Textio became aware of Ongig's unlawful use of the Textio platform and promptly sent Ongig a letter regarding its conduct.

45. In its letter, Textio demanded that Ongig cease use or access of the Textio website and confirm that such use will not resume, and that Ongig provide a list of every email address that Ongig (including, without limitation, its employees, contractors, or other agents) used to create a Textio user account or otherwise access the Textio website or product from January 1, 2015 to the present. Ongig has never provided this list.

46. Textio further demanded that Ongig refrain from publishing or making available any product or service created using information obtained from the Textio product, including the "Rewritten Job Descriptions" service described on Ongig's "What We Do" webpage. Textio demanded that, to the extent that such service had already been made available, Ongig remove it from the market immediately. Ongig has never provided confirmation that it has complied or will comply with these demands.

47. Textio further demanded confirmation that Ongig was preserving all documents, communications, and records (including text or instant messages, chats, emails, drafts, or any other records, data, or images) (a) reflecting or relating to use of Textio, (b) reflecting sales of Ongig's products or services, and/or (c) reflecting or containing communications with actual or prospective customers of Ongig. Ongig has never provided this confirmation.

## FIRST CAUSE OF ACTION
### (Computer Fraud and Abuse Act, 18 U.S.C. § 1030)

48. Textio re-alleges and incorporates by reference herein all earlier paragraphs of the Complaint as though fully set forth herein.

49. Textio's relevant computer systems are "protected computers" as defined in 18 U.S.C. § 1030(e)(2)(B), in that these computer systems are used in interstate or foreign commerce or communication.

50. Textio maintains proprietary information and data on these protected computers, including its proprietary predictive engine used to analyze and identify meaningful language patterns in job descriptions uploaded by its customers. Textio retains ownership of its computer systems operating its product, external access and use of which is limited to authorized users.

51. Ongig, through its employees, contractors, or other agents, have intentionally accessed Textio's protected computers without authorization, and/or have exceeded authorized access, as defined in 18 U.S.C. § 1030(e)(6), obtaining information they were not entitled to access, through its repeated signups for Textio trial accounts with the use of false and pretextual information and in violation of Textio's Terms of Service.

52. Ongig, through its employees, contractors, or other agents, further intentionally accessed Textio's protected computers without authorization, and/or exceeded authorized access, as defined in 18 U.S.C. § 1030(e)(6), obtaining information they were not entitled to access by continuing to access Textio's platform after Textio sent Ongig a cease and desist letter on February 28, 2018 expressly prohibiting such access.

53. Defendants' conduct involved interstate or foreign communications.

54. Defendants' conduct caused damage to Textio in violation of 18 U.S.C. § 1030(a)(2)(C).

55. As a direct and proximate result of Defendants' unlawful access, Textio has suffered monetary damage in excess of the $5,000 statutory threshold, including, without limitation, time valued in excess of this amount spent investigating and responding to the unlawful access, in addition to other damages and economic loss resulting from the unlawful access.

## SECOND CAUSE OF ACTION

### (Breach of Written Contract)

56. Textio re-alleges and incorporates by reference herein all earlier paragraphs of the Complaint as though fully set forth herein.

57. The Terms of Service attached as Exhibit B is a valid and enforceable written contract between Textio and Ongig.

58. Pursuant to Section 2.2 of the Terms of Service, Ongig was required to use Textio "solely for [the registrant's] internal business use."

59. Pursuant to Section 2.3 of the Terms of Service, Ongig was prohibited from copying Textio's product in whole or in part" or accessing Textio in order to build a competitive product or service.

60. As set forth more fully above, Ongig breached the Terms of Service by its unlawful, systematic access of Textio's platform for the customer-facing business purpose of creating a competitive job description product.

61. Textio has performed each and all of the conditions, covenants, promises, and obligations imposed by it by the Terms of Service.

62. As a direct and proximate result of Ongig's breach of the Terms of Service, Textio has suffered damages, which continue to accrue, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Unfair Business Practices – RCW 19.86 *et seq.*)

63. Textio re-alleges and incorporates by reference herein all earlier paragraphs of the Complaint as though fully set forth herein.

64. Ongig's improper exploitation and repurposing Textio's product to market and offer Ongig's own service constitutes an unfair and/or deceptive business practice occurring in trade or commerce.

65. Ongig's conduct impacts the public interest because consumers may purchase Ongig's services under the false impression they are getting the benefits of Textio's technology

through Ongig when, in fact, this is only due to Ongig's unlawful access and use of Textio's product to repurpose as its own.

66.  Ongig's conduct impacts the public interest for the additional reasons that Ongig committed the alleged acts in the course of its business; its repeated acts are part of a pattern of conduct aimed at improperly exploiting Textio's product; there is a real and substantial potential for repetition of Ongig's conduct going forward; and Ongig marketed and offered its services based on its unlawful conduct in incorporating and referring to Textio's product to the public in a manner that was and is likely to affect consumers.

67.  Ongig's actions violate RWC 19.86 *et seq*.

68.  Textio is entitled to a judgment enjoining and restraining Ongig from engaging in further unfair business practices under RWC 19.86 et seq.

## FOURTH CAUSE OF ACTION

### (Washington Common Law Unfair Competition)

69.  Textio re-alleges and incorporates by reference herein all earlier paragraphs of the Complaint as though fully set forth herein.

70.  The above described false statements constitute unfair competition in violation of the common law.

71.  Textio has been, is now, and will be irreparably injured and damaged by Ongig's acts as set forth more fully above and, unless enjoined by the Court, Textio will suffer further harm to its business. This harm constitutes an injury for which Textio has no adequate remedy at law.

72.  Ongig's conduct constitutes unfair competition in violation of Washington common law.

73.  Textio is entitled to a judgment enjoining and restraining Ongig from engaging in further unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, as a result of the foregoing, Textio respectfully requests that the Court enter judgment against Ongig as follows:

      a)      Enjoining Ongig, including all officers, agents, servants, employees, attorneys, successors and assigns of Ongig, as well as all persons, firms, and corporations in active concert or participation with any of them, from directly or indirectly violating Textio's rights under the Computer Fraud and Abuse Act or violating Textio's Terms of Service;

      b)      An order directing that Ongig file with the Court and serve upon counsel for Textio within thirty (30) days after entry of such order or judgment a report in writing and under oath setting forth in detail the manner and form in which Ongig has complied with the injunction;

      c)      An award to Textio of damages it has sustained or will sustained by reason of Ongig's conduct;

      d)      An award of restitution to Textio of all money, property, and profits that Ongig has diverted from Textio or that Ongig has unlawfully gained;

      e)      An award of up to treble Textio's actual damages, as authorized by RCW § 19.86.090;

      f)      An award of attorneys' fees and costs in this case, as RCW § 19.86.090 authorizes;

      g)      Pre- and post-judgment interest on any monetary award; and

      h)      Any other relief that this Court deems just and proper.

///
///
///
///
///
///
///
///
///

**DEMAND FOR JURY TRIAL**

Textio hereby demands a trial by jury of all issues so triable.

Dated: June 27, 2018

FENWICK & WEST LLP

By: s/*Elizabeth B. Hagan*
Elizabeth B. Hagan (WSBA No. 46933)
1191 Second Avenue 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Email: ehagan@fenwick.com

Jedidiah Wakefield*
Todd R. Gregorian*
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:   415.875.2300
Email:   jwakefield@fenwick.com
            tgregorian@fenwick.com

Attorneys for Plaintiff TEXTIO, INC.

*Application for leave to appear *pro hac vice* to be submitted

COMPLAINT
CASE NO.: 2:18-cv-958

17

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101